*Decision will be entered under Rule 50.*

HAROLD AND DORIS S. GILBERG, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2381–69.  Filed January 7, 1971.

Harold Gilberg, pro se.
*David L. Miller*, for the respondent.

SIMPSON, *Judge:* The respondent determined a deficiency of $119.98 in the petitioners' 1965 Federal income tax. The issue for decision is whether certain automobile expenses incurred by the petitioner in traveling to and from his work are deductible under section 162 of the Internal Revenue Code of 1954 [1] as ordinary and necessary expenses of his trade or business.

FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

The petitioners, Harold Gilberg and Doris S. Gilberg, are husband and wife, who maintained their residence in Marblehead, Mass., at the time of filing their petition in this case. They filed their joint 1965 Federal income tax return with the district director of internal revenue, Boston, Mass. Mr. Gilberg will be referred to as the petitioner.

The petitioner maintained his residence at Marblehead, Mass., from 1962 through 1965.

During the period January 1, 1960, to December 31, 1965, the petitioner was employed by the U.S. Government as a Defense Department Army contract auditor. The petitioner was assigned generally to the

[1] All statutory references are to the Internal Revenue Code of 1954.

Boston, Mass., region, which includes the six New England States and part of New York State. His duties involved the auditing of companies performing under Government contracts.

The petitioner was assigned as a resident auditor in Boston from 1960 to 1962, and in 1963 and 1964 in Andover, Mass., at a Raytheon Co. plant. During such assignments, Boston and Andover were considered his permanent duty stations. While working in Andover, the petitioner continued to reside at Marblehead, traveling daily a round-trip distance of 84 miles to and from his work. He traveled by privately owned automobile as a member of a six-man carpool.

On January 18, 1965, the petitioner became a mobile auditor. As such, his permanent duty station became the U.S. Army Audit Agency, Waltham, Mass. He remained permanently assigned at Waltham until transferred to Army Base, Boston Mass., on July 2, 1965. Boston was his permanent duty station for the remainder of 1965.

From the branch office at Waltham, and later from the branch office at Boston, the petitioner was assigned to various temporary audit locations including Burlington, Cambridge, Amesbury, and Brighton— all in Massachusetts. Assignments at these locations varied in duration. During a field audit, the petitioner was required to work at the site of the audit during the hours maintained by the contractor. In 1965, the petitioner drove his own automobile to and from the temporary field audit sites on 161 days. He made these trips from his residence at Marblehead. Distances to Burlington, Cambridge, and Brighton are greater when traveled from Marblehead than when traveled from either Waltham or Boston. On the remaining working days in 1965, he drove from his residence to his permanent duty station in either Waltham or Boston and return.

In 1965, the policy of the petitioner's employer was to reimburse mobile auditors for local travel (50 miles or less one way) to and from temporary duty stations at a rate of 10 cents per mile. Reimbursement was allowed for the distance from the employee's permanent duty station to the temporary duty station, or the distance from his residence to the temporary duty station, whichever was less. In 1965, the petitioner drove a total of 7,262 miles in traveling to and from his temporary duty stations. He received reimbursement for 3,345 miles, but reimbursement for the excess was not allowed because it was due to the fact that his daily trips to and from Marblehead had exceeded the distances from the permanent duty stations in Waltham or Boston.

On his daily trips to his temporary duty stations, it was necessary for the petitioner to transport certain materials. On his initial trip to a temporary duty station, he had to carry two brief cases and two

field manuals—the dimensions of each manual were about 8 inches by 6 inches by 4 inches. Thereafter, it was possible to leave one of the brief cases at the temporary site, but the two manuals and one brief case were kept in the car and had to be carried back and forth each day. The character of certain audit materials made it necessary for them to be removed from the field audit site.

On his 1965 return, the petitioner claimed a deduction for automobile expenses which were incurred in travel between his residence and temporary duty stations in Massachusetts and for which he was not reimbursed by his employer. He also claimed a deduction for certain expenses incurred in travel to and from a temporary duty station outside of Massachusetts. In his notice of deficiency, the respondent disallowed a deduction for unreimbursed automobile expenses incurred in travel between the petitioner's residence and his temporary duty stations in Massachusetts, but the respondent did not disallow the deduction for expenses of travel to the temporary duty station outside of Massachusetts.

OPINION

In this case, we are faced with another challenge to the respondent's long-standing rule disallowing a deduction for commuting expenses. At trial, the counsel for the respondent erroneously stated that the deficiency was due to the disallowance of automobile expenses incurred in traveling to and from the petitioner's temporary duty stations in Massachusetts and other expenses incurred in traveling to the temporary duty station outside of Massachusetts, but he made no claim for an additional deficiency based on the disallowance of the expenses for travel outside of Massachusetts. It appears that the petitioner did not have adequate notice that the expenses for travel outside of Massachusetts were in issue or that an additional deficiency was claimed, and we have concluded that such expenses have not been properly placed in issue. Sec. 6214(a) ; see *H. F. Campbell Co.*, 54 T.C. 1021 (1970); compare *Estate of Harry Britenstool*, 46 T.C. 711, 718–719 (1966). Accordingly, the only issue for decision is whether the automobile expenses incurred by the petitioner in driving to and from his work in Massachusetts for which he did not receive reimbursement are deductible as ordinary and necessary expenses of his trade or business.

For the automobile expenses to be deductible under section 162, the petitioner must show that such expenses are deductible either under section 162(a)(2) as traveling expenses incurred while away from home, or under the general provisions of section 162(a) as ordinary and necessary expenses of carrying on a trade or business. At the outset, we may put section 162(a)(2) aside as inapplicable.

That provision has been held to relate only to overnight trips or to travel requiring sleep or rest. *United States* v. *Correll*, 389 U.S. 299 (1967). The petitioner has not shown that any of his trips to the temporary audit sites required him to remain overnight or required a period of sleep or rest. Consequently, the petitioner has failed to establish that the automobile expenses are deductible under section 162(a)(2).

Some transportation expenses are deductible under section 162(a) as ordinary and necessary expenses of a trade or business. *William L.Heuer, Jr.*, 32 T.C. 947 (1959); *R. C. Musser*, 3 B.T.A. 498 (1926). However, if such expenses are in the nature of commuting expenses, they are not deductible. *Commissioner* v. *Flowers*, 326 U.S. 465, 473 (1946); *United States* v. *Tauferner*, 407 F. 2d 243, 245 (C.A. 10, 1969); *Smith* v. *Warren*, 388 F. 2d 671, 672 (C.A. 9, 1968); *Steinhort* v. *Commissioner*, 335 F. 2d 496, 503 (C.A. 5, 1964); *Joseph J. Bunevith*, 52 T.C. 837 (1969), affd. ——— F. 2d ——— (C.A. 1, March 30, 1970); *Frank H. Sullivan*, 1 B.T.A. 93, 94 (1924). The petitioner has the burden of proving that his expenses are deductible. *Welch* v. *Helvering*, 290 U.S. 111 (1933); Rule 32, Tax Court Rules of Practice.

The petitioner contends that the expenses in issue were incurred because his employer required him to work at the site of an audit during the hours of operation of the contractor under audit. This requirement, it is argued, made it necessary for the petitioner to proceed directly to the temporary jobsite and to return directly to his residence without stopping at Waltham or Boston. Thus, following the petitioner's reasoning, all of the travel from his residence to his temporary audit sites in Massachusetts in 1965 was required by his business. The respondent, on the other hand, contends that the travel which gave rise to the expenses in issue arose not because of a requirement of the petitioner's employer, but because of the personal decision of the petitioner to locate his residence in Marblehead.

This case is indistinguishable from *Joseph J. Bunevith*, *supra*, in which we held that a taxpayer, who was an auditor of school lunch programs, was not entitled to deduct his unreimbursed traveling expenses. He received reimbursement as if he traveled from Boston, but he chose to live outside the region of the schools which he audited. We held that he chose his residence for personal reasons and that his unreimbursed traveling expenses were therefore personal and not deductible expenses.

Similarly, in this case, there is no evidence of any requirement by his employer that the petitioner locate his personal residence in Marblehead. To the contrary, the evidence indicates that the petitioner continued to live in Marblehead as a result of his personal choice

to do so. During the 5-year period 1960–65, he was permanently stationed in either Boston or Waltham nearly three-fourths of the time; yet, during most of that time, he lived in Marblehead, approximately 20–22 miles from Waltham and approximately 15 miles from Boston. When, in October 1962, he was permanently assigned to an audit site in Andover, Mass., he continued to reside in Marblehead although it was necessary to travel 84 miles each day. When in 1965 the petitioner was transferred permanently to Waltham, he elected not to move into the Waltham area because he did not wish to uproot his family.

Moreover, by continuing to live in Marblehead, rather than in the vicinity of Waltham or Boston, the petitioner increased substantially the distances that he had to travel each day to his temporary duty stations. The distance to only one of the temporary audit sites to which the petitioner traveled in 1965 was actually shorter because he began his travel from Marblehead. Trips to Brighton, Cambridge, and Burlington were longer. For example, according to the stipulation, the distance from Marblehead to Burlington and return was 50 miles; whereas, the distance from Waltham to Burlington and return was 22 miles. The daily trip to Brighton was 5 miles when the travel commenced at Boston, but 30 miles when the travel commenced at Marblehead. Had the petitioner chosen to live in the vicinity of Waltham or Boston, he could have minimized or eliminated the travel for which he was not reimbursed. Cf. *Wright* v. *Hartsell*, 305 F. 2d 221, 225 (C.A. 9, 1962). Under these circumstances, it seems clear that the petitioner chose to continue to live in Marblehead for personal reasons and that the unreimbursed automobile expenses were incurred for personal reasons. Accordingly, such expenses are commuting expenses which are not deductible. Secs. 1.162–2, 1.262–1, Income Tax Regs.; *Commissioner* v. *Flowers, supra; Carragan* v. *Commissioner*, 197 F. 2d 246 (C.A. 2, 1952); *Joseph J. Bunevith, supra; Arthur Sansone*, 41 T.C. 277 (1963).

In the alternative, the petitioner contends that all or a part of the expenses in issue are deductible because he was required to carry with him in his car certain materials necessary to the performance of his employer's business.

In recent years, the respondent, our Court, and other courts have considered the question of whether an employee may deduct all or a part of his commuting expenses when he is required to carry tools or other materials used in his work. By Rev. Rul. 63–100, 1963–1 C.B. 34, the respondent held that when an employee would not have driven "but for" the necessity of carrying tools to his work, his commuting expenses are deductible. In *Charles Crowther*, 28 T.C. 1293 (1957),

reversed on other grounds 269 F. 2d 292 (C.A. 9, 1959), we held that when an employee drove to work and carried his heavy and bulky tools with him, his driving served a dual purpose so that a part of his expenses were deductible. However, in *Lawrence D. Sullivan*, 45 T.C. 217 (1965), we held that under no circumstances did the carrying of tools justify a deduction for any part of commuting expenses. Our decision was reversed by the Second Circuit (368 F. 2d 1007 (1966)) which held that if the employee would not have driven "but for" the necessity of transporting his tools, all of his commuting expenses are deductible. The Second Circuit also held that even if the employee would have driven without the necessity of having to transport his tools, the fact that he did transport his tools justified a deduction for a part of his commuting expenses when there were no storage facilities at the jobsite. The Seventh Circuit in *Tyne* v. *Commissioner*, 385 F. 2d 40 (1967) and 409 F. 2d 485 (1969),[2] reversing Memorandum Opinions of this Court, adopted the rule that if an employee transported tools which could not readily have been carried on public transportation, all or a part of his commuting expenses are deductible.

The rule that the costs of commuting are nondeductible personal expenses is one of the oldest and most fundamental in our tax laws. Secs. 1.162–2(e), 1.262–1(b)(5), Income Tax Regs.; *Frank H. Sullivan*, 1 B.T.A. 93 (1924); see 4A Mertens, Law of Federal Income Taxation, sec. 25.96, fn. 94. The rationale for this rule can be directly traced to sources in the British tax law. *Frank H. Sullivan, supra; Revell* v. *Directors, etc.*, 3 Gr. Brit. Tax Cases 12 (1890); *Cook* v. *Knott*, 2 Gr. Brit. Tax Cases 246 (1887); *Lothian* v. *Macrae*, 22 Scot. L. Rep. 219 (1884); S.M. 1048, 1 C.B. 101 (1919).

The rationale for the commuting rule is founded on the premise that one is free to choose the location of his personal residence. *Frank H. Sullivan, supra;* S.M. 1048, *supra.* Most people who work must engage some form of transportation to reach their place of employment. Some people may choose to reside close to public transportation that will enable them to reach their place of employment inexpensively. Others may prefer to live many miles from their place of employment and many miles from public transportation because they are seeking the space and privacy of the suburbs, because they prefer the people who live in the neighborhood, because they wish to live near a river, the sea, or the mountains, or because it is cheaper. If a person chooses to incur the inconvenience and increased expenses in living far from his place of employment or from public transportation, he does so for personal reasons, and it is therefore for personal reasons that he

---

[2] Certiorari denied 396 U.S. 838 (1969).

incurs the additional commuting expenses. To allow a deduction for such expenses would be to allow a deduction for personal expenses.

In *Helvering* v. *Winmill*, 305 U.S. 79, 83 (1938), the Supreme Court held that Treasury regulations have the effect of law when they have been in effect for many years and when they apply provisions of law that have not been amended. Such statement is peculiarly applicable in this situation. The Treasury regulations have long construed the statutory disallowance of personal expenses to apply to commuting expenses. Many requests have been made for modifications in the rule—many of them have some equitable appeal; yet, the rule has generally remained unchanged. This situation is similar to that considered by the Supreme Court in *United States* v. *Correll*, 389 U.S. 299 (1967). There, the Court held that the overnight rule for determining when a taxpayer was away from home was a rational administrative interpretation of the statute, that it had been in existence for many years, and therefore, the courts should respect and follow it in the absence of a statutory change. Similarly, the commuting rule provides a reasonable basis for determining when a taxpayer's transportation expenses are deductible, and it has stood the test of time. *Steinhort* v. *Commissioner*, 335 F. 2d 496 (C.A. 5, 1964). Under these circumstances, in our judgment, we are required to respect and follow that rule—if any modification is to be made in it, the modification must be such that it will not undermine the rule.

It seems clear that the carrying of the brief cases and the manuals was not the "but for" reason for the petitioner driving his own automobile; and therefore, he cannot claim the benefit of the test set forth in the respondent's revenue ruling. The facts of this care are also distinguishable from those in *Tyne* v. *Commissioner*, 385 F. 2d 40 (C.A. 7, 1967) and 409 F. 2d 485 (C.A. 7, 1969),[3] reversing Memorandum Opinions of this Court. In that case, the tools that had to be carried were a good deal heavier and bulkier and could not under any circumstances have been carried on public transportation. On the contrary, it would not have been impossible to carry the brief cases and manuals on public transportation, even though it might not have been easy to do so. Therefore, we need not and do not decide whether all or part of the commuting expenses are deductible in the circumstances described in the *Tyne* case.

On the other hand, this case is not factually distinguishable from *Sullivan* v. *Commissioner*, 368 F. 2d 1007 (C.A. 2, 1966). We have carefully considered the opinion of the circuit court, but we must respectfully disagree. If every employee who carries tools or other materials involved in his work is allowed to deduct a part or all of his

---

[3] Certiorari denied 396 U.S. 833 (1969).

commuting expenses, the commuting rule will be extensively nullified. Such a rule would mean that every person who lives in the suburbs and carries a brief case for business purposes would be entitled to deduct a part of the expenses which he has incurred because he has chosen to live in the suburbs. In our opinion, such a modification in the commuting rule would amount to an overruling of it, and that action is inconsistent with the Supreme Court's mandate in *Correll*.

Furthermore, in the circumstances of this case and of the *Sullivan* case, we think that there is no rational basis for making an allocation of the portion of the commuting expenses properly attributable to the carrying of the tools or other materials. The Second Circuit court assumed that such expenses could be itemized and separated in the same manner as a businessman who makes a business trip on which he also incurs some personal expenses; but the two situations are not analogous. The personal expenses of the man on a business trip can usually be identified and separated from the business expenses; whereas, ordinarily, there is no rational basis for determining the portion of the commuting expenses properly allocable to the carrying of tools or other similar materials.

To retain the general vitality of the regulatory provisions disallowing a deduction for commuting expenses, any exception should be limited to the situation in which it is clear that the carrying of tools or other materials made it necessary for the employee to drive his own automobile. To come within such an exception, the employee would have to show that the tools or other materials were so heavy and bulky that, as a practical matter, they could not be carried on public transportation. He would also have to show that he would not have driven but for the necessity of carrying the tools. If he resides in such a place that he would have driven his own automobile, whether or not he had to carry the tools, his only transportation expenses are his personal nondeductible commuting expenses, and they are not increased by reason of his carrying the tools or other materials. It may be argued that such a rule is too restrictive—that there are other situations in which equity calls for the deduction of some or all of the commuting expenses; but in speaking of the attempt to find an ideal rule, Judge Brown said in *Steinhort* v. *Commissioner*, *supra* at 503: "At times the pursuit of this approach brings about illogical and near absurd conceptual situations." In appraising the commuting rule, he also said:

But its predominant and redeeming grace is a sort of rough equality among all the millions of taxpaying, income-earning Americans who go—not as in scriptural days down to the sea in ships—but who go to and from their homes and their place of work. A lesser virtue is administrative uniformity.

In connection with the overnight rule, which presented similar questions for the court, Chief Judge Aldrich said in *Commissioner* v. *Bagley*, 374 F. 2d 204, 208 (C.A. 1, 1967):

Not only in a rule of thumb, but in any application of principles there has to be a dividing line, and in as complex an area as this one the line is bound to be indistinct. It can become totally lost by talking equivalents.

In conclusion, we hold that a taxpayer is not entitled to a deduction for any part of his commuting expenses merely because he carried with him some tools or other materials used in his work. To be entitled to a deduction for any part of his expenses, he must show that he would not have driven but for the business necessity of carrying the tools or other materials used in his work and that such tools or materials could not, as a practical matter, be carried on public transportation. We find that the petitioner's brief cases and manuals could have been carried on public transportation and that he would have driven his own automobile regardless of whether he had to carry the brief cases and materials, and therefore, no part of his commuting expenses are deductible.

To the extent that our opinions in *Charles Crowther*, 28 T.C. 1293 (1957), reversed on other grounds 269 F. 2d 292 (C.A. 9, 1959), and *Lawrence D. Sullivan*, 45 T.C. 217 (1965), are inconsistent with this opinion, we will no longer follow those cases.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

TANNENWALD, *J.*, concurring: I start from the premise that commuting expenses are not deductible. Such being the case, I think that commuting involves not only the transportation of the physical body of the taxpayer but whatever accoutrements are necessary to carrying out his employment—an employment which he selected as a matter of personal choice.

In view of the foregoing, I would be inclined to follow the rule set down by this Court in *Lawrence D. Sullivan*, 45 T.C. 217 (1965), reversed and remanded 368 F. 2d 1007 (C.A. 2, 1966), at least in those cases where the need to carry tools was a known necessity at the commencement of a taxpayer's employment. Respondent, however, has adopted a "but for" test—namely, if the taxpayer would not have driven his automobile except for the need to carry bulky objects required in his employment, he is entitled to a deduction of *all* of his transportation costs. See Rev. Rul. 63–100, 1963–1 C.B. 34.

The thrust of efforts to etch out exceptions to the general rule disallowing commuting expenses, when combined with the obvious de-

sirability of articulations of law for the guidance of taxpayers, produces a most difficult situation. Unfortunately, in areas such as involved herein, the English language is not imbued with sufficient precisional quality to do more than permit the development of a broad principle which can be readily applied. See *Seaford Court Estates Ltd.* v. *Asher*, [1949] 2 K.B. 481, 498. I think Rev. Rul. 63–100 provides a reasonable frame of reference within which to determine the availability of a deduction on the assumption that some deduction is allowable. Cf. *United States* v. *Correll*, 389 U.S. 299 (1967). Any attempt to allocate deductions in situations such as this is like trying to square a circle since the same transportation *simultaneously* serves a dual purpose. Such a situation is to be contrasted with those where *at any one time* the expense incurred is either business related *or* personal.

QUEALY, *J.*, agrees with this concurring opinion.