CYRIL SHILLING and JOAN SHILLING, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
SHILLING v. COMMISSIONER
Docket Nos. 5366-71, 2593-73, 4289-73.
United States Tax Court
T.C. Memo 1978-456; 1978 Tax Ct. Memo LEXIS 60; 37 T.C.M. (CCH) 1847-64; November 14, 1978, Filed Cyril Shilling, pro se. Harvey S. Sander, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: These cases were assigned to and heard by Special Trial Judge Charles R. Johnston. Pursuant to the order of the Chief Judge dated November 2, 1977, as amended, the provisions of Rule 182, Tax Court Rules of Practice and Procedure are not applicable to these cases. *61 The Court agrees with and adopts the Special Trial Judge's opinion which is set forth below. OPINION OF SPECIAL TRIAL JUDGE JOHNSTON, Special Trial Judge: These cases were heard pursuant to the order of the Chief Judge dated November 2, 1977, as amended. The respondent determined deficiencies in petitioners' Federal income tax in the amounts of $122.94, $460.61 and $335.15 for the taxable years 1968, 1969 and 1970, respectively. Concessions having been made, the issues remaining for decision are: (1) whether petitioners are entitled to deductions under section 162(a) [1] for transportation expenses of $1,617.47 in 1969 and $1,721.00 in 1970 incurred in traveling by personally-owned automobile between petitioners' residence and various job sites at which petitioner, Cyril Shilling, was employed; and (2) whether section 63 is unavailable to respondent for the years 1969 and 1970. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts together with the exhibits attached thereto are incorporated herein by this reference. *62 Petitioners' legal residence at the time of filing the petitions herein, and during the taxable years at issue, was 114 Holbrook Road, Centereach, New York. Petitioner, Cyril Shilling, is a carpenter by trade and during the taxable years 1969 and 1970 he was employed as such at various job sites on Long Island, New York. He traveled by personal automobile between his residence and his various places of employment carrying with him the tools used in his trade. When Cyril drove to the job sites where he worked, no other person traveled with him. His tools weighed approximately 180 pounds. No alteration was required to petitioner's automobile to facilitate the carrying of his tools. During the year 1969 Cyril drove between his residence and job sites in various localities for the days and distances as follows: Days
Daily Round
Total Round Locality
Worked
Trip Mileage
Trip Mileage
Farmingdale College
157
50
7,850
Farmingdale, New York
1/14/69 - 1/17/69
3/17/69 - 12/31/69
Veterans' Hospital
24
34
816
Northport, New York
1/20/69 - 3/11/69
Total
181
8,666
In 1969 Cyril incurred the following travel expenses which were deducted *63 on petitioners' joint Federal income tax return for said year: Item
Amount
Depreciation
$ 832.00
Insurance
221.00
License
30.75
Gasoline
261.48
Oil & Lubrication
43.58
Repairs
150.29
Tires & Tubes
64.05
Washing & Polishing
11.32
Inspection
3.00
Total
$ 1,617.47
He incurred no expense for tolls when he drove to and from his residence and the various job sites at which he worked. During the year 1970, Cyril drove between his residence and job sites in various localities for the days and distances as follows: Days
Daily Round
Total Round Locality
Worked
Trip Mileage
Trip Mileage
Farmingdale College
39
50
1,950
Farmingdale, New York
1/2/70 - 1/23/70
11/18/70 - 12/30/70
Veterans' Hospital
30
34
1,020
Northport, New York
2/10/70 - 3/23/70
Long Island Lighting
55
37
2,035
Northport, New York
3/24/70 - 5/8/70
6/8/70 - 7/28/70
Huntington, New York
Food Fair Stores
18
47
846
5/11/70 - 6/3/70
A & P Stores
23
45
1,035
8/10/70 - 9/10/70
Waldbaums
8
35
280
10/7/70 - 10/12/70
11/2/70 - 11/5/70
A & S
5
48
240
11/9/70 - 11/13/70
Synagogue
6
43
258
9/23/70 - 9/30/70
Suitorama, Route 110
7
50
350
10/21/70 - 10/28/70
Elwood, New York
Bell Telephone
6
30
180
9/14/70 - 9/21/70
Big Apple, Route 25A
3
28
84
10/29/70, - 11/16/70,
11/17/70
Total
200
8,278
*64 He incurred no expense for tolls when he drove to and from his residence and the various job sites at which he worked. In 1970 Cyril incurred the following travel expenses which were deducted on petitioners' joint Federal income tax return for said year: Item
Amount
Depreciation $ 832.00
Insurance
217.00
License
31.00
Inspection
3.00
Repairs
192.00
Tires
73.00
Gas, Oil & Lubrication
373.00
Total
$ 1,721.00
The driving time from petitioners' residence to the Farmingdale job site would be between 45 and 50 minutes; to the Northport job sites it would be between 35 and 40 minutes; and to the Huntington and Elwood job sites the driving time would be slightly longer than the time to Northport. Cyril started work at 8 a.m. and finished work at 3:30 p.m. In the vicinity of petitioners' residence in Centereach, New York bus routes numbered 60, 62, 63, 64 and 72 were in operation. These bus routes could not have been utilized in any manner by Cyril to travel from his residence to any job site at which he worked in 1969 and 1970. During the years 1969 and 1970, the Long Island Railroad (hereinafter referred to as LIRR) operated a bus between Greenport, *65 New York, which is east of Centereach and Huntington, New York, which is west of Centereach. The bus stopped at Pleasant Avenue in Centereach. After Pleasant Avenue, going in a westerly direction, the bus proceeded on Route 25. Between Pleasant Avenue and Huntington, the bus was only authorized to stop at the Smith Haven Mall, the Suffolk County Center, and Huntington. The bus traveled through Commack, New York, passing Larkfield Road, but it was not authorized to stop there. The first bus in the morning leaving Pleasant Avenue in a westerly direction would depart at 7:20 a.m. and would arrive in Huntington at 8:00 a.m. In the afternoon, busses departed from Huntington going in an easterly direction to Centereach at 1:09 p.m., 4:09 p.m., and 6:22 p.m. The 4:09 p.m. bus would arrive at Centereach at 4:44 p.m. The bus stop in Centereach would be a brisk fifteen minute walk for Cyril from his residence. It would take approximately ten minutes to get from the LIRR bus stop in Huntington to the job sites situated in the Plaza, Huntington. The time to get to those situated elsewhere in Huntington does not appear. There were six job sites in Huntington, i.e., Food Fair Stores, A *66 & P Stores, Waldbaums, A & S, Synagogue, Suitorama, and the distance of each from Cyril's residence was 23-1/2, 22-1/2, 17-1/2, 24, 21-1/2 and 25 miles, respectively. OPINION The question to be determined is whether petitioner, a carpenter by trade, is entitled to deduct during the taxable years as an ordinary and necessary business expense under section 162(a) the cost of travel between his residence and the various job sites at which he worked. He traveled to and from his places of employment in his personally-owned automobile in which he would carry the tools of his trade as well as other miscellaneous equipment. The tools weighed about 180 pounds. On his income tax returns for 1969 and 1970, petitioner deducted as employee business expense $1,617.47 and $1,721.00, respectively, attributable to the cost of traveling between his place of residence and his places of work. Respondent disallowed the claimed deductions and asserted the deficiencies herein at issue. A taxpayer's costs of commuting to work are personal expenses and ordinarily do not qualify as deductible expenses. Section 1.262-1(b)(5) Income Tax Regs. However, the Supreme Court has held that if a taxpayer *67 incurs additional expense in traveling between his residence and his place of employment because of the necessity of carrying his tools to work he may deduct the additional expenses. Fausner v. Commissioner,413 U.S. 838 (1973). Respondent concedes the applicability ofRev. Rul. 63-100, 1963-1 C.B. 34, to the facts in the instant case. But, in order for the petitioner to deduct the costs of his transportation within the rules prescribed inRev. Rul. 63-100, he must show that he would not have traveled to the job sites by private vehicle but for the necessity of having to transport his tools and equipment. If a taxpayer would have driven his automobile to work had he not been required to transport his tools, he has incurred no such additional expense and nothing is deductible. Gilberg v. Commissioner,55 T.C. 611 (1971). Cyril's contention is that if he did not have to carry his tools, he would have used public transportation to travel to and from the various places at which he worked in each of the years. As the parties have stipulated and we have found, bus routes numbered 60, 62, 63, 64 and 72 could not have been *68 utilized by Cyril for that purpose.His reliance is mainly upon the LIRR bus route which passed through Centereach along Route 25 to Huntington. The stops on that route were at the intersection of Pleasant Avenue and Route 25, at South Haven Mall, at the County Center (there was no authorized stop at the intersection of Larkfield Road and Route 25 in Commack) and at Huntington. It was Cyril's contention that he would have used the LIRR bus route to reach the job sites at Huntington, Northport (in part to Commack then pick up ride), and Farmingdale (in part to Huntington, then pick up ride). The record does not show how petitioner could have gotten to Elwood which is located about a mile to a mile and a half from the intersection of Larkfield Road and Route 25. The location of Cyril's work site at the Big Apple on Route 25A cannot be precisely located on this record. Nor can its accessibility to Cyril by public transportation be ascertained. It is clear, however, that the LIRR bus route does not approach Route 25A closer than a mile and a half on the portion of the route we are concerned with. Respondent contends that the facts show that Cyril's use of the LIRR bus route would *69 at the least be impracticable.He points out that the earliest scheduled arrival time of the bus in Huntington is 8:00 a.m. and the point of arrival is at least 10 minutes from the nearest work site if the bus arrives on time. This assuredly guarantees Cyril would be tardy or late for work every day. Additionally, the earliest bus which would bring Cyril home each day left at 4:09 p.m. and was scheduled to arrive at Centereach at 4:44 p.m. Petitioner then had a 15 minute walk to his residence. The driving time between Cyril's residence and the Huntington work sites was between 45 and 50 minutes. The evening trip home, including the waiting and walking time, would take about an hour and a half. We agree with respondent's contention that no employer would countenance a union worker reporting to work late every day. We also agree that it is difficult to believe petitioner would have traveled by bus with such inconvenient schedules. With respect to travel to Northport, Farmingdale and Elwood, we think petitioner has failed to show that there was a practicable means of transportation to and from work. Not only did it depend on unauthorized bus stops, but also on additional forms *70 of transportation based essentially on pick-ups or taxis. In the case of the Farmington job, it is clear that use of the bus arriving in Huntington at 8:00 a.m. insured petitioner's late arrival at work on a daily basis and an even later arrival at home. There does not appear to have been any means of public transportation readily available to petitioner which would have enabled him to arrive at his various places of work at the normal starting time for his trade. Nor does the record show any other practicable means of commuting to and from his jobs other than by his private vehicle. We therefore conclude that petitioner would have driven to work even if he had not been required to carry his tools and equipment in his automobile. While this conclusion requires us to sustain the respondent's disallowance of the claimed business expense, we also note that petitioner has failed to establish the amount of any additional expense incurred because of the necessity of carrying his tools to work. Petitioner testified that he used his car at work to drive to other job sites from time to time. Such use does not make the expense of driving to and from work deductible. Feistman v. Commissioner,63 T.C. 129 (1974). *71 It is true that the expense of driving between work sites is a deductible expense but unfortunately the record does not show the number of times such trips were made nor the distance traveled. Petitioner has the burden of proof to show the number and lengths of such trips. Welch v. Helvering,290 U.S. 111 (1933); Rule 142, Tax Court Rules of Practice and Procedure. He has not sustained that burden. Petitioners contend that they are entitled to refunds of $658.88 and $892.00 in 1969 and 1970, respectively, on the account of the non-availability of section 63 to respondent. This claim is based on the argument that the statutory notice was wrongly issued. That in issuing the statutory notice the Commissioner of Internal Revenue disregarded the statutory formula set out in section 63; that since the formula was disregarded it was not available to the Commissioner by his knowingly wrongful act; and, that as a matter of law, without application of section 63 there cannot be any "taxable income" to the petitioners thus entitling them to the refund claimed. This argument was advanced and rejected in two Memorandum Opinion of this Court [2] on the grounds that it is *72 essentially an argument that the motives of the Commissioner were improper so that he should be estopped or precluded from collecting any tax from the petitioners. Cf. Crowther v. Commissioner,28 T.C. 1293, affd. on this issue 269 F. 2d 292 (9th Cir. 1959). Decision will be entered for petitioners in Docket No. 5366-71.
Decision will be entered under Rule 155 in Docket No. 2593-73.
Decision will be entered for Respondent in Docket No. 4289-73.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. Frey v. Commissioner,T.C. Memo. 1971-208; Coker v. Commissioner,T.C. Memo. 1972-80↩.